Your Honor, this is the first case of the afternoon, called 210-586 James R. Johnson v. State Farm Fire and Casualty Company. On behalf of the appellant, Mr. Michael Reisis. On behalf of the appellee, Mr. Timothy Lawley. Mr. Reisis? And counsel, I understand that we've adjusted the time so everyone knows the timing? Yes. And Mr. Reisis, you indicated, or did someone indicate there might be somebody that you were waiting for? Well, I wasn't sure my client might show, but there was no commitment, so I think we should just proceed. Okay. If you want to wait for them, we're happy to do that until the assigned time. We're ready. All right. Thank you. May it please the court, counsel, my name is Michael Reisis and I'm here today on behalf of State Farm as appellant cross-appellee. This is an appeal from the trial court's judgment which found that State Farm was stopped to deny coverage. The issue on appeal is whether a stop applies to an insurer's defense that the policy was canceled and not in effect at the time of the accident. In its oral ruling, which we've quoted at length on pages 12 and 13 of our brief, the trial court clearly stated that State Farm was stopped, but the court refused to make any determination of whether the policy had been canceled. We respectfully submit that the trial court could not decide whether State Farm reached the duty to defend without first deciding whether there was a policy in force and not canceled before the loss. Well, wasn't the point that he was making was that that was a determination that should have been made in a declaration action or a defending with reservation of rights? You only have to do that if you have a potential duty to defend. Is there, from your client's perspective, there is no dispute. From his client's perspective, there is a dispute. Was there a dispute ongoing about whether or not there was a valid policy, a coverage? There was a dispute as to whether there was a contract of insurance in existence. There was no dispute. State Farm was not asserting as a defense that what might be called a policy defense where it was relying on the terms of the policy. The dispute was really outside the four corners of the policy and went to the very issue of whether or not there was a contract of insurance in existence. Based on the Supreme Court holding an ALGO trust, it's well recognized that if there's no policy in existence, logically, there cannot be a duty to defend if the contract does not exist. And cancellation would be one of those instances where a policy did not exist. Wasn't there a dispute about cancellation and then reinstatement of the policy and the date and the number on the renewal of the policy or the application for the reinstatement of the policy? Did that create the issues? That created issues, but those, again, are issues that go to whether or not there's a contract of insurance in existence. And in any case, whether it is in a declaratory judgment action where the underlying case is pending or after the underlying case has been disposed of by judgment and then you litigate the issue of whether or not there was a duty to defend, you're going to have a dispute. You just can't use the potential for coverage because, again, there's a dispute, to prevent the insurer from proving that there was no contract in existence in the first place. Why didn't State Farm just come in and challenge the issue of coverage in the underlying claim? That is a business decision that it makes and no one takes. It has legal ramifications. The cases are pretty clear. If there's a dispute about coverage, you have two choices. Come in, defend with a reservation, or? If there is a duty to defend, you're right. If there is a duty to defend, if there is a contract of insurance in existence, you are right. Absolutely. If State Farm had said, you know what, we didn't get notice. Notice is a condition of the policy. It's a so-called policy defense. If they don't defend their reservation of rights, if they don't file a declaratory judgment action promptly, they're going to be stopped. No question about it, to use that as an example. But the cases also recognize that certain defenses are not policy defenses and cannot be lost through the estoppel doctrine. And we cited a couple of those cases. For example, if the defense is that the policy was issued based upon a material misrepresentation on the application, the insurance company can assert that as a defense. It doesn't have to defend. And it takes the risk, Justice Burkett, as you were pointing out, they may lose because they didn't proactively come in. No question about that. But they have the right under ELCO trusting, I'm sorry, ESCO, ELCO trust, if I can get that out, to litigate the issue afterwards. In another case that we cited, Pepper Construction Company, the court said that an insurer was not prevented from asserting that a party, which was not the name insured, was not covered under the policy because there was no contract between that party and the insurance company. These cases are predicated on the Supreme Court's holding an ELCO trust that estoppel does not apply if the policy wasn't in existence. And that is what was one of the issues that should have been decided by the trial court in this case before making any determination on whether or not State Farm had coverage for the judgment. Well, hadn't State Farm admitted the existence of the policy but claimed that it was canceled? Correct. Aren't they different? I don't believe so. How is it different than, say, in Pepper Construction versus Transcontinental? There is an insurance policy. In American State Farm versus American Services, a policy issues. In the cases that we're talking about, there's an insurance policy. And in the Pepper Construction context, where you've got a dispute over whether somebody is insured, there is a valid contract of insurance that's been issued to someone other than the party who's claiming to be an insurer. But the courts recognize that certain defenses can't be lost through estoppel. And cancellation, I submit, logically is closer to a defense that goes to the existence of the policy, whether it was in effect on the date of the loss, than a policy defense like, oh, late notice, an exclusion, whether a risk comes within the insuring agreement. Those are policy defenses, and an insurance company can lose that defense very easily if it doesn't act proactively to get a determination of its rights or defend on their reservation. But cancellation is not one of those policy defenses. Now, the trial court, to be fair, relied on a case, American Standard versus Nojewski, which is against us. And I don't dispute the fact that if you read Nojewski literally, then the judge did what he should do, and he followed an appellate decision from the 5th District. But even Nojewski recognizes that estoppel does not apply where there's no insurance contract. We submit that Nojewski is wrong because it wrongly departed from the subtle rule to hold that the insurer was estopped because of a dispute, and we talked earlier about, you know, there's always been a dispute, over its compliance with the insurance code and whether that gave rise to the, quote, potential for coverage. Every case, there's always going to be the potential for coverage. We submit that to the extent that Nojewski is read to hold that a carrier is estoppel whenever it relies on cancellation to deny coverage, it wrongly confuses cancellation with a policy defense and represents a warranted expansion of the estoppel doctrine beyond its logical and theoretical underpinnings. Nojewski should not be followed here. Whenever an insurer asserts cancellation as a defense, it will have to pay if the fact finder ultimately decides that the policy was in effect. That is a risk that the insurer knowingly takes in asserting the defense without defending under reservation or filing a declaratory judgment action. But estoppel should not be used to dispense with the proof that is necessary to establish coverage when estoppel presupposes the existence of an insurance policy, and the insurer should have the opportunity that State Farm was denied to prove that it did not receive the premium necessary to keep the policy in force. An insurer should not have to pay for a loss for which it did not receive a premium. So viewed, cancellation is not a policy defense. It is an exception to the estoppel doctrine and a trial court error in ruling that State Farm was estopped without first deciding the threshold issue of whether the policy had been canceled and was not in effect on the date of loss. Well, I'm not so sure, reading the briefs and what I have on the record, that this is a dispute over cancellation. This is a dispute about, a rather seminal dispute about whether we know there was a cancellation date. I think it was February 12th or something of that nature. Yes, you're correct. And then there are conversations that have been stated and denied. Again, a dispute indicating that this policy would be reinstated. The same number was used. The same, you know, the premium a little different. Different because it's a different coverage, yes. Well, but that's the dispute. The dispute isn't over whether it was canceled or not. The dispute is whether it was reinstated, and that's different than what you just posited. Excuse me, there's still a dispute as to whether there was a policy in effect, whether there was a contract of insurance. Well, there was a contract of insurance. The premium was paid. Right. A cancellation notice was sent. Yes. And then these other events occur, conversations. We'll read the state policy. There's no question that State Farm filled out a new insurance policy using the same number as the original policy, which creates an inference that the conversations actually did occur, otherwise it would be a new number. So the dispute is to whether or not State Farm should be relieved of its obligation to defend under the facts of this case, and that's why you say we should not follow Nojuski, correct? Well, correct, because either way, there's still an issue as to whether or not there was a contract of insurance. That's why the court said you're a stop because it was a legitimate dispute about coverage. Which presupposes that there had to be a contract in existence, though. Okay, I mean, you're right. Cancellation is only one part of it. Although counsel wouldn't even concede cancellation, but the point is that you're right. But however you get to it, there's still a question whether or not there was a contract in existence, and Elko trust is very clear. You can't lose a defense that's predicated upon the existence of a contract if the contract didn't exist. And all we're saying is the judge has to make that determination before he can make any other determination as to whether or not there's coverage. I know my time is up. Part of my brief does relate to some other issues. I stand on those issues. I know we'll have plenty more to discuss this afternoon. Thank you. Thank you. Thank you. Mr Lowry. Thank you. Please. The court council. Judge Brady should be affirmed. American Standard vs. Natushki should be followed. And if you follow American Standard vs. Nijewski, then I think you have to rule for us in this case. And I think really the essence of this fundamental question of insurer estoppel is discussed in Elko, Nijewski. And I'm looking at page 18 of the initial brief of State Farm. And they say Nijewski one confuses cancellation of the policy defense and represents an unwarranted expansion of the estoppel doctrine. I would submit to you that it is not an unwarranted expansion. It is the essence of the estoppel doctrine, the separate insurer estoppel doctrine, which is its own doctrine, not equitable estoppel, not one of the 19 other estoppels you may find in the dictionary. But it is the essence of this insurer estoppel described in Elko. And the essential language is this. And it talks about the parameters of it. And it says at 186 Illinois 2nd, 153, the argument that the insurer is free to disregard its duty to defend where the insurer first breaches the contract of insurance by failing to provide timely notice. We are not persuaded by this argument. And to accept it would contradict long established law governing the insurer's duty to defend. You could just as easily put in the words instead of provide timely notice, provide timely payment. It's a condition precedent defense. And at page 154, the only Supreme Court in Elko said. And again, talking about their argument in that case. To allow that insurer to allow that late notice defense to hold otherwise would seriously undermine the effectiveness of the estoppel doctrine and its intended enforcement of the duty to defend. And it discusses a case, a law review case. And it says reviewing the history of the estoppel doctrine and arguing against the recognition of an exception for condition precedent defenses. Now in Elko, late notice was a condition precedent defense. And the court clearly rejected it. Said that is not an exception to the estoppel doctrine. If you look at the state farm policy, page 17 and 18 of the policy, it said here are the condition precedents, late notice, pay on time or we will cancel. It's the same thing. There is no reason to treat this case any differently than a late notice condition precedent. It's a timely payment condition precedent defense. As the Elko court has said, that would undermine the entire purpose of the estoppel doctrine for insurers. It's serious business when you're given a claim. If there's any question about coverage, file a declaratory judgment action, defend under a reservation of rights, do one of those two things. Don't just ignore it, which is what they did in this case. And accordingly, when Majewski says that the disputed question is the key, I believe they're taking that from Elko, saying the disputed question is the key. And they said, and it's right on point, cancellation? No, that is not an exception to the estoppel doctrine. So to rule for state farm, you have to say Majewski was wrong, and I don't see it. And I don't see how it's consistent with Elko. Now, a couple of cases counsel has cited, those are cases where there really was no policy. Rescission, in the eyes of the law, there is no policy to avoid ab initio. And that other case was Pepper. They said, this was not our insurer. There's no policy. That's not the issue here. He was the insurer. The policy dates match up. The question is cancellation. And that, Majewski said, is not sufficient to prevent insurer estoppel from applying. Is, Mr. Reese has indicated that you have not even acknowledged there was a cancellation. Is that true? I think that there was not a proper cancellation. And as I said in my brief, under the, for two reasons. Where it is versus independent order of foresters, they can't cancel a policy if they have the money. All right? It's pretty fundamental. They can't do it. And that's the overpayment issue? Sure. And in this case, we know the policy was $190 a year. He paid $596, even if you get rid of all the bounced checks. He paid $596. It was up to them to show why this wasn't enough. Because of this other policy. They lost their cancellation witness, Michelle Rosario. They were too late in naming her. Judge Brady barred that witness because they named her too late. So they had no witness who could prove this. The person they had go up there and talk about the payments, Mr. Gotti, he didn't even know if the auto policy was enforced the whole time. So how do you know what you're supposed to charge? There is no record made by State Farm as to what the appropriate charge was. And if you get into the details of that payment and his testimony, they've got a fee for this, a fee for that. There are all these little fees, and there's no explanation by anybody with the competence to say that they're justified. And Mr. Gotti wasn't disclosed under Rule 213. Nor was he competent to say that these payments apply. As I said, he didn't even know if the auto policy was enforced. So how do you know what they should have been charging all along? That's reason number one. And then to properly cancel a policy, assuming, arguendo, that payment isn't made properly, you have to mail out notice. And under the insurance code, it has to be on a form acceptable to the Postal Service. Now, acceptable to prove what? Acceptable to prove that this cancellation was mailed to Mr. Strzok. Not just which is their position. They think they can just prove that they sent out 2,600 pieces of mail that day. That's not enough. That makes no sense. And that's all their form does. Now, this is your cross appeal. Is that correct? It's the cross appeal, but it relates to your prior question because there were two bases, two disputes that Judge Brady saw that triggered, should have triggered their either filing a declaratory action way back when or defending under a reservation of rights. One dispute was the mail dispute, and second was the dispute regarding Mr. Monteleone and, you know, was this paid and so forth. Did he agree to allow the late payment or the payment during the grace period, etc. So there were these two disputes, and either one were sufficient to trigger their requirement that they pay or that they file a declaratory judgment or defend under a reservation of rights. I believe I have about five minutes left. I'll try to hit some of the highlights or take your questions. Well, I have a fundamental question about the cross appeal. While I understand that the issue applies to this part of the case, the dispute, why are we entertaining an argument on summary judgment when there's been a final judgment? I've appealed Judge Brady's ruling on summary judgment. But, I mean, why should we entertain it? Didn't it merge into the judgment? I hope it's moot. I hope you're here for me. I know. You're hedging your bet. I'm asking legally, doesn't it merge into the judgment, and so why should we be entertaining it? Well, the only way for me to appeal that decision, I believe, is to file the cross appeal, which is what I did. Well, you could have appealed it earlier. You could have tried a 304A or something. I didn't see the point of a 304. I could have done that, perhaps, and I don't know how many of those are accepted. I don't think a lot of those are accepted, but I'm certainly within my rights to file it now, as I did. And certainly I hope it's moot, and I hope you don't get there. And as I've said, I think Elko is right on point, and State Farm is absolutely wrong. They read the policy defense issue too narrowly. Policy defenses are conditioned precedents. That's what Elko said. This is a conditioned precedent, late payment, right to cancel. And even in their notice they say, pursuant to the terms of your policy, we are canceling you. It's a policy defense, and there's no dispute that Mr. Strzok received the notices of cancellation. We really don't know. There's been no testimony on it, and he passed away. So we really don't know what he received. But there's also no question that he tried to reinstate the policy. Right. He showed up at their office with a check for $276.01, and he certainly tried to have it reinstated. That's apparently got the information from Mr. Monteleone. And, you know, one of the points is there were just so many strange things about State Farm's position in this case, and they say I'm misrepresenting things in their brief, but he shows up with a check for $276.00, and if you look at that application, the numbers don't add up to $276.00. $225.00, $210.00, and I think $9.00, they add up to $246.00. It was very strange. Why is it that that form, defendant Exhibit 7, has different numbers on it? It doesn't add up to $276.00, and it tells you he was trying to do what he believed Mr. Gotti said he could do, which is pay for that policy. And, again, there was no need for Judge Brady to rule as to whether the policy was in existence. They admitted it was in existence.  So this is not like a rescinded policy because, in the eyes of the law there, it never existed. And I would submit even that case and the Peppers case probably goes too far in terms of just following Melco. But if you're going to make an exception to the insurer-estoppel doctrine, that no policy defense really means no policy. In the eyes of the law, with precision, there is no policy. That's not the case here. So where are we in this case? There's no complaint relying on insurer-estoppel. There's no authority saying that I have to plead insurer-estoppel. There's no affirmative defense on file of cancellation. They have this little throwaway line in one paragraph. And if you look at the Path v. Chrysler court, prior pleadings are withdrawn if they're not pled again. So originally they pled affirmative defense, cancellation. Then they lost their witness to prove cancellation, Michel Rosario. Next thing you know, in their next answer, there's no affirmative defense. What were they trying to do? I think they were trying to blur the lines as to what the burden of proof was. They knew they couldn't prove cancellation because they didn't have the witness. So what really happened? They purposely didn't plead affirmative defense, cancellation, hoping that that would make a difference. And it didn't. So how do we even get to their allegation that, well, we should have pled estoppel and so forth? There's no case anywhere that says there's a separate doctrine describing how a co-insurer-estoppel has to be pled. That's one. Second, they never pled cancellation. And there are many of these cases cited in my brief. They don't even reply to them. Andrews v. Kramer, International Insurance v. Sgt. Lundy, Culligan v. Rockwater. They respond to that one, but they ignore FAF, which says you have to, if you're going to have a prior pleading, you have to replete it if there's another complaint. So they ignore that. And then Western Casualty v. Brooklyn. You can't raise a new issue on appeal. They didn't take the position in the trial court that they had an active affirmative defense, which is what they're doing now. In the trial court, they even argued that they didn't have an affirmative defense. They reminded the court, we don't have an affirmative defense. And I believe I give the cite to that page. I want to say it's 1999 in the record. It's in my brief. But they do one thing in the trial court, claim that they don't have an active or don't take an active affirmative defense, don't plead it like they did before, and now they're trying to say, oh, we had an active affirmative defense all along. And that required you to plead insurer-estoppel, despite the fact that there are no cases that say you have to plead insurer-estoppel. And with regard to your point earlier, Justice Hutchinson, there's a whole other way that Judge Brady could have ruled for us. If he didn't do it on insurer-estoppel, he could have said you didn't prove that you didn't have the money. Because I proved that there was over $190 paid. They didn't prove that that wasn't good enough. The second basis was this agreement with Mr. Monteleone. And I've got many cases cited in my brief, no reply to them. Thank you. Thank you. If a policy is canceled, it doesn't exist. I want to start with counsel threw up a lot of things. Let me start with the whole issue as to whether or not cancellation was even an issue at the trial of the case. We obtained partial summary judgment on the proof of mailing issue under the insurance code on October 20, 2008. That wasn't really a separate claim. Honestly, Justice Hutchinson, I don't know that you could have gotten a 304A on that. And I'm not questioning that the issue is properly before you. Well, I know you're not. But I'm still confused about why it's just not part of this final judgment and why you didn't challenge it. I wouldn't challenge it. I wouldn't. But why you wouldn't challenge their cross appeal. Good guy. You know, I represent State Farm, but I'm a good guy. Exactly. All I will say, the court obviously has an independent duty to examine its own jurisdiction at all times. Thank you very much, Mr. Reese. It's okay. All right. At that time, when we got summary judgment on that issue, we didn't think that we needed or owed an answer to the second amendment complaint. Compared to the first amendment complaint, it's the same cause of action for declaratory judgment. But when we did file an answer to the second amendment complaint, we said in paragraph 15 that the policy was canceled. Did we set it out separately as an affirmative defense? No. Did we raise it affirmatively? Yes. Did the court hear evidence on it? Yes. Did the plaintiff ever object to trial about the sufficiency of the defense of cancellation? No. Never raised one issue about it. For that reason, we ask that you deny his motion to strike portions of our briefs that relate to the issue of cancellation and how it was played. We've heard some talk about what struck Ode or didn't know on his policy and how we lost a cancellation witness. Look, we had a witness, Jack Ode. He told the court, and it's in the record, exactly what was owed with respect to the two policies. Did he pay $596 to stay far between April of 2002 and the end of November of 2002? Yes. But by February 2003, he owed a lot more than $596. How do we know that? All you have to do is do the math. We know that the premium was $190 for this policy. We know that he owed one twelfth of it every month. We know that he owed a $3 service charge every month. That came to about $18.93. He subtracted from $78.67 that he had to pay every month. He owed about $59 on the auto policy. He owed $78 every month. He didn't pay in December. The check bounced. He knew it bounced. He knew what he owed. He tried to pay two monthly payments in January. It also bounced. The idea, and there's no evidence that he ever complained about any billing error. It is sheer fantasy for counsel to keep on saying State Farm lost a witness. State Farm couldn't prove all was owed. State Farm couldn't prove that there wasn't an overpayment. Every shred of evidence in terms of a document shows exactly what was owed, when it was owed, it wasn't paid, when it was supposed to be paid, and for that reason, quite clearly, we did prove cancellation. Certainly, the evidence would not have allowed the trial court to find this truck was paid in full on the date of the loss, February 16th. We've heard some talk about the rewrite application. Counsel said that he wasn't even relying on the rewrite application in the trial court. He said it on the record. We've quoted that in both of our briefs. He doesn't have any reliance on it. But as far as what it represents, it wasn't to reinstate the policy. It was for a new policy. It was for a different policy. It was for a policy with different coverages, which would benefit Mr. Johnson, higher medical, lower deductible. Let's talk a little bit about going back to the threshold issue of a stop-up. And counsel says, well, the policy says that the insured has to make the premium. The policy says that the insured has to make the premium. Therefore, it's a policy defense. But American Services v. State Farm addressed a very similar argument. There, the argument was, well, the policy says you have to be truthful. You have to be truthful. You weren't truthful. That's a policy defense. But you're a misrepresentation because you weren't truthful. That's a policy defense. The court said it's not a policy defense. It goes to the issue of whether or not there was a valid contract. If you don't pay the premium, the policy is going to get canceled. If the policy is canceled, it doesn't exist. Is there a dispute about that? There was a dispute. That potential doesn't mean that State Farm's a stop. State Farm should at least have the chance to make that showing that the contract did not exist. And for the court to say in this case that State Farm breached a contract that may not have existed is not logical. It goes beyond the estoppel doctrine that Elko set forth. We think Elko's the law. We don't think Nojewski is the law. But, Mr. Reese, you did have what you want, trial counsel, I don't think, but you did have the right to assert cancellation. He just didn't decide, saying that that was a legitimate dispute that should have been decided beforehand. Which sounds like a policy defense. Some defenses are not policy defenses. I mean, we have to begin with the premise that some defenses cannot be lost, right? Some defenses cannot be lost. Defenses that go to whether or not the policy existed can't be lost. We know what they are. At least we know a couple of instances of what they are. You rely on the application, the insurer wants to rescind the policy. Not a policy defense. You can't be a stop. You don't owe any duty. You can just sit there and wait to be sued. That's a business risk. If you're wrong, you're going to pay. And if we were wrong, we would pay. But the court didn't say we were wrong as far as whether the policy existed. The court said you lost your chance to even prove it. That is a very different thing. Other cases. Peppers. Counsel says, well, Peppers is a case where there was no contract ever between the party seeking to be covered and the insurance company. But there was a contract. It just wasn't necessarily with that particular party. And we would say in this case, yes, at one time there was a policy. But not on or after February 12, 2003. The court had to make a decision whether or not the policy was canceled. It didn't. Very briefly, on the cross appeal, I think there's much more in the briefs on the cross appeal than we had in the oral argument today. I do want to at least go over a little bit of what the certificate of mailing shows, because it is in our appendix. And it has a lot of information. And I think the court needs to understand it. It's on pages six and seven of our appendix. We know that on January 28, 2003, State Farm mailed out 2,694 cancellation notices from its Texas facility. It was 209 pages. If you look in the upper right-hand corner, you can see it's 209 pages. It's computer generated. Each mailing has a separate log number. For Mr. Strzok, it was 729. It appears on page 57 of the 209-page certificate. The certificate has all the information required by the U.S. Postal Form 3877. It has the address of the sender. It has the address of the recipient. It has the postage. It has the signature of the mailing employee. It has the signature of the postal employee. On the bottom of the 209th page, we know that there were 2,694 pieces that were listed and 2,694 pieces that were received. We know the total postage, all according to form. If you go through counsel's argument, and I have to admit I had to go through it a couple times, I guess what he's really complaining about, and maybe we'll hear more about it in the time he has for his rebuttal, he's complaining that not every page of 209 pages was signed at the bottom. There is no case, not in Illinois, not outside Illinois, that is ever so held. We would refer you to Loisel, one of the cases we cite, the Vermont case, very similar. There was only two pages. Only the second page was signed. Court said it passed muster under the form 3877. Mindful that oral argument is a privilege and not a right. We are glad to be here today to address the court and make our arguments, and for all the reasons in our brief, we ask you to reverse and, with respect to our appeal, and enter judgment, or reverse, impart, and affirm with respect to the cross appeal and remand for further proceedings. Thank you. Thank you, Mr. Reese. Mr. Lowry. Yes. May it please the court, again, counsel. And I just want to be clear about one thing. We have a couple of motions pending. Counsel has to cite the Elders case, which was published in February, I believe, or winter of 2011. There was nothing new in that case. If it was going to be cited, it should have been cited in the initial briefs. And that's, I think, everything falls from there. And as far as his motion on my briefs, the Beckmeyer case should have been collateral estoppel as to, I believe, Judge Brady. And it wasn't. Same issue, same parties, final judgment on the merits, and all the markings of a collateral estoppel case. And I think what's important here, and we're talking about canceling insurance and proving bailing, complying with the insurance code, and Marketview Motors, in my brief, says the insurer must strictly comply with the statutes. And Reagan v. Columbia, which the Beckmeyer court followed, said you cannot use other evidence to prove mailing. And that's why the Beckmeyer case was decided that way. Under the Reagan case, Supreme Court, you cannot use other evidence to prove your mailing. Now, the problem when State Farm starts freelancing and creating its own forms is, what do they mean? Well, it says 3877, I think, is the number, or other acceptable something. I can't remember the word. But does that mean it has to have the postal service or the insurance code or some insurance agency that says this is the form? Or somebody at the Department of Insurance says this form's okay? Or is it reasonable to say this is the information that's on 3877. We send out 250 pages' worth of these every day. Let's put it all on one page. The insurance code, 215-5143.14, says maintain proof of mailing on a notice of cancellation, U.S. Post Office form, or form acceptable to the U.S. Post Office. And I've cited a domestic mail manual. And it has various forms you can use. One of them is for bulk mailing. You can prove you sent out 3,000 pieces of mail. But it also says in the regulations that can't be an itemized list to prove mailing to each of those people. So the problem is when you freelance a form and you don't use the facsimile, which is, again, what the domestic mail manual says, you can use 3877. You can use a facsimile. And State Farm has made light of it, but every definition of facsimile in the case law says exact copy. That's what it is. So the problem is State Farm presents these forms to the postal people, and they don't know what they prove. And State Farm's own mailing witnesses say, we don't know what this proves to the Post Office. Is it proving just that they mailed out 3,000 pieces of mail? Or is it proving that this particular piece of mail was mailed to this person? Their own witnesses don't even know what it proves to the United States Postal Service. But if a Postal Service employee signs it, isn't that some indication they accept it? They accept it, and for what purpose? To show that they mailed out 3,000 pieces of mail? Or to show that they mailed it to this person? And we don't know that. Now, State Farm tries to use other evidence to get you to that point. The Randy Davis letter. Of course, the Randy Davis letter says, we approved this form from 1998, doesn't attach it in violation of Robodeau v. Oliphant. Is it sworn in violation of Robodeau v. Oliphant? State Farm tries to take an N round around 191 and says, we got this as a business record. Okay, great. We don't know what form Randy Davis was talking about because he doesn't attach it. Randy Davis isn't sworn in. And we have no explanation as to how anyone can say anything contrary to what the Domestic Mail Manual says. And the Domestic Mail Manual specifically says, no one, no coastal employee, no one can alter the terms of the Domestic Mail Manual. They all have to abide by it. And so State Farm is playing fast and loose here because they have a problem with multiple mails. Well, what they should really be doing is using form 3877 or a facsimile. Thank you. And again, it is a privilege, not a right. And we do appreciate it. Thank you. Thank you, counsel, for your argument. We will take this matter under advisement.